PER CURIAM:
Claimant brought this action for personal injuries which occurred when she fell into a drainage grate on W.Va. Route 76 in Rosemont, Taylor County. The drainage grate on W.Va. Route 76 is maintained by respondent. At the time of the incident, *200 claimant was walking towards the residence of Sara Henderson when she fell through the space between the slats in the drainage grate located on the side of the road. Claimant alleges that respondent used an inappropriate grating cover at this location. The Court is of the opinion to make an award in this claim for the reasons more fully stated below.
The incident giving rise to this claim occurred at approximately 7:30 p.m. on March 28, 2004. Claimant and her husband went to the residence of Sara Henderson, a co-worker of the claimant at Mountain State Auto Auction, to inform her that she needed to work the following day. The Hendersons’ residence is located adjacent to W.Va. Route 76. A guardrail separates the Hendersons’ property from W.Va. Route 76, but the guardrail does not extend around the drainage grate, which is located outside the white edge line on the comer of the property. The drainage grate is situated approximately twelve feet south of the Hendersons’ front porch. In order to enter the Hendersons’ residence from the parking area, which is located approximately eighteen feet from their residence, one would need to walk around the drainage grate and onto a narrow area between the guardrail and the white edge line on W.Va. Route 76. There is a gap in the guardrails where there are steps leading to the Hendersons’ house.
Sara Henderson, who resides in the property where this incident occurred, testified that on the evening in question, she recalled that her husband notified her that a vehicle had pulled into their parking area. Her husband stated, “Whose car is this?” When Ms. Henderson walked out the door, she heard the claimant yell “Hey,” and then the claimant “disappeared.” Claimant had fallen through the space between the slats in the grate.
Ms. Henderson explained that the guardrail was placed at this location prior to the installation of the drainage grate. Ms. Henderson’s husband was concerned that the drainage grate was exposed and had expressed his concern to respondent during the installation of the drainage grate. Since the Hendersons’ have young grandchildren, he realized that they potentially could get injured and wanted the guardrail to extend around the drainage grate. Ms. Henderson testified that this incident was the first time anyone had fallen at the drainage grate.
Brenda Fortney testified that she and her husband decided to stop at the Hendersons’ residence after church that evening. They went to the Hendersons’ house .because the Hendersons did not have a phone at that time. Claimant’s husband parked their vehicle in the parking area next to the Hendersons’ house. Although it was dark and claimant had never been to Ms. Henderson’s house prior to this evening, she did not bring a flashlight with her. Claimant exited the vehicle and proceeded towards the house. She did not have any knowledge of the drainage grate, and she had not walked along that road in recent years. Claimant recalled yelling “Hey,” and before she had a chance to say “it’s me,” she fell into the drainage grate. Ms. Fortney stated that the openings in the drainage grate were approximately three and a half inches wide. Claimant’s left foot turned and slid into the grate, and the bone in her knee fell into one of the openings. Claimant testified that her leg was stinging and burning as her husband lifted her out of the grate. After the incident, claimant’s husband helped her walk towards the house. Ms. Henderson met the claimant and her husband at the top of the steps, and claimant indicated that she had fallen and tore her jeans. She told Ms. Henderson that she needed to come to work the next day, and then she and her husband left the residence and returned to Shinnston where they reside.
*201 As a result of this incident, claimant sustained swelling and bruising in her left leg and experienced severe pain and discomfort. Claimant went to the doctor’s office the day after the incident, and the doctor advised her to keep off her leg as much as possible. Claimant had trouble walking after the injury and occasionally used crutches. Although her leg has healed, claimant testified that to this date, she suffers from swelling in her leg. In addition, the injury left scarring on her leg, and she now walks with a limp. Claimant submitted invoices for her medical and pharmaceutical expenses. The invoices demonstrate that she incurred the following costs: 1) medical supplies in the amount of $22.98; 2) prescription medication in the amount of $33.29; and 3) a co-pay for claimant’s medical visit in the amount of $15.00. Thus, claimant’s medical expenses total $71.27. Claimant also sustained work loss in the amount of $500.00 from April 3, 2004, to May 1, 2004.
The position of the respondent is that it did not have actual or constructive notice of the allegedly defective drainage grate prior to this incident. Jeff Pifer testified that he is currently the Assistant District Four Maintenance Engineer for respondent. At the time of the incident, Mr. Pifer was the Maintenance Assistant for respondent. He stated that the drainage grate at this particular location was installed in 1994 on respondent’s thirty-foot right of way. He testified that the inlet for the drainage grate is referred to as a Type G Inlet, which is used on rural paving jobs and interstate medians. Mr. Pifer explained that there is a distinction between rural and urban drainage grates.[22] In urban areas, where there are more pedestrians, and the drainage grates are maintained more regularly, urban grates are used. In rural areas, where there is more debris, larger openings are needed. Mr. Pifer stated that the drainage grate’s openings at this particular location were approximately three to three and a half inches wide. The guardrail in this area was designed to protect motorists from going over the hill side. Since the hazard was the hill side behind the guardrail and not the drainage grate, respondent did not extend the guardrail around the drainage grate. Prior to claimant’s incident, respondent did not receive any complaints regarding this particular drainage grate.
According to Bob Caltrider, Transportation Crew Supervisor for respondent in Taylor County, the drainage grate at this location was used to drain water underneath W.Va. Route 76. Mr. Caltrider stated that in 1994, respondent had performed work on a paving project in this area, and respondent was responsible for upgrading drainage and ditch lines to conform to federal standards. Mr. Caltrider did not have knowledge of any complaints regarding the drainage grate prior to this incident.
The well-established principle of law in West Virginia is that the State is neither an insurer nor a guarantor of the safety of travelers upon its roads. Adkins v. Sims, 130 W.Va. 645; 46 S.E.2d 81 (1947). In order to hold respondent liable for road defects of this type, a claimant must prove that respondent had actual or constructive notice of the *202 defect and a reasonable time to take corrective action. Chapman v. Dept of Highways, 16 Ct. Cl. 103 (1986).
In the instant case, the Court is of the opinion that respondent had at least constructive notice of the drainage grate that caused claimant’s injury. The Court finds that the drainage grate used at this particular location created a hazard due to the grate’s large openings. The rural grate was located in close proximity to a parking area used by the Hendersons’ residents and guests, necessarily placing them in jeopardy when they walked on the only means of ingress and egress to the residence. Thus, there is sufficient evidence of negligence to base an award. The Court finds that claimant is entitled to recover $2,371.27 (medical expenses in the amount of $71.27, work loss in the amount of $500.00, and pain and suffering in the amount of $1,800.00). Notwithstanding the negligence of the respondent, the Court is also of the opinion that the claimant was negligent since she failed to take carry a flashlight or take precautions to avoid falling while she was walking in a dark, unfamiliar area. In a comparative negligence jurisdiction such as West Virginia, the claimant’s negligence may reduce or bar recovery in a claim. Based on the above, the Court finds that the claimant’s negligence equals fifteen-percent (15%) of her loss. Since the negligence of the claimant is not greater than or equal to the negligence of the respondent, claimant may recover eighty-five percent (85%) of the loss sustained.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to the claimant in the amount of $2,015.58.
Award of $2,015.58.

 Mr. Pifer explained the distinction between rural and urban drainage grates as follows:
Q: Why is that kind of grate used in rural areas and on the interstate?
A: It’s a maintenance issue. In the cities you use a smaller grate opening because of bicycles and pedestrians but in the country there’s not somebody that can, we just can’t watch all these inlets all the time. They’ll cover over with stick or rocks and then leaves and then the water is jumping the inlet and going where it shouldn’t go. Whereas, in the city, you know, there’s usually an agency that’s watching those and can keep them cleaned off more regularly.